# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES WHITNEY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2: 12-cv-01623 |
| ) | |
| v. ) | Chief United States District Judge |
| ) | Joy Flowers Conti |
| JOHN E. WETZEL, et al., ) | |
| ) | United States Magistrate Judge |
| Defendants. ) | Cynthia Reed Eddy |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully submitted that the Motion to Dismiss filed by Defendants (ECF No. 29) be granted in part and denied in part. The Motion should be granted as to Plaintiff's claims under the First Amendment that his privileged mail was improperly opened and granted as to Defendants' request to dismiss Defendants Wetzel, House, Switzer, Linderman, and Oppman based on lack of personal knowledge. The Motion should be denied as to Plaintiff's First Amendment retaliation claim, his Eighth Amendment conditions of confinement claim, his Fourteenth Amendment equal protection claim, and denied with respect to Defendants' request to dismiss Defendant Coleman.

**II.    REPORT**

   A.    Procedural History

Plaintiff, Charles Whitney, is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), currently incarcerated at State Correctional Institution ("SCI") - Benner, in

1

Bellefonte, Pennsylvania.[1]  He is proceeding in forma pauperis and has filed this civil rights complaint against DOC Secretary John E. Wetzel, as well as the following officials employed at Plaintiff's prior place of confinement SCI-Fayette:  Superintendent Brian V. Coleman, Superintendent's Assistant Rhonda House; Deputy Superintendent for Facilities Management Steven M. Gates, Major Scott Nickelson, Carl E. Walker, Security Cpt. Joseph Trempus,[2] Unit Manager Charles Byers, Stephen Buzas, Brian Parsons, Cpt. Timothy Berrier, Business Manager Michael Oppman, Darlene Linderman, Lt. Randall Clark, C/O Benjamin Vorpahl, and Lt. Martin Switzer.  (ECF No. 7 at 2.)[3]  Also named are five (5) John Doe Defendants.  All Defendants are sued in both their individual and official capacities. (ECF No. 2).  His Complaint asserts liability pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment.

Defendants have responded to the Complaint by filing a Motion to Dismiss, with brief in support (ECF Nos. 29 and 30) and Plaintiff has filed a timely brief in opposition (ECF No. 32), as well as Exhibits in Support of his Complaint (ECF No. 34).  The matter is ripe for disposition.

---

[1]  The incidents complained of in this lawsuit occurred while Plaintiff was housed at SCI-Fayette, which the Court takes judicial notice of is located in Labelle, Pa, which is within Fayette County, one of the counties encompassed within the territory of the federal district court for the Western District of Pennsylvania.

[2]  According to Defendants, Defendant Trempus is misnamed in the Complaint as "Cpt. Treppett" and Defendant Vorphal is misnamed as "C/O Vorpal."

[3]  Due to the lack of clarity in the Complaint, the job titles of some Defendants is unclear; the Court was able to ascertain some job titles through the DOC web site: http://www.cor.state.pa.us/institutions/Fayette.

B. <u>Standard of Review</u>

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly,* such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to

3

the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, '"where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

A court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In a section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).[4] *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since

---

[4] The Court of Appeals for the Third Circuit has explained the liberal construction of pro se pleadings, as follows:

this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins*, 293 F.3d at 688). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378, (5th Cir. 2002).

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

In addition, in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Pertinent to the case at bar is the authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims. Specifically, Congress enacted the provision at 28

---

> The federal rules do not adhere to the ancient principle that a pleading must be construed most strongly against the pleader. Nor do the federal courts require technical exactness or draw refined inferences against the pleader; rather, they make a determined effort to understand what he is attempting to set forth and to construe the pleading in his favor, whenever justice so requires. This is particularly true when a court is dealing with a complaint drawn by a layman unskilled in the law. In these cases, technical deficiencies in the complaint will be treated leniently and the entire pleading will be scrutinized to determine if any legally cognizable claim can be found within it.

*Lewis v. Attorney General of U.S.,* 878 F.2d 714, 722 (3d Cir. 1989) (quoting 5 C. Wright & A.

5

U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

In addition, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed in forma pauperis (IFP), i.e., without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Further, the PLRA substantially amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e. In this regard, the PLRA amended section 1997(c) to require the court "on its own motion or on the motion of a party" to dismiss any action brought by a prisoner with respect to prison conditions under 42 U.S.C. § 1983 if the action is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." *See* 42 U.S.C. § 1997e(c)(1).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28 U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 6).

---

Miller, Federal Practice and Procedure § 1286, at 381-84 (1969)).

In addition, his claims concern prison conditions. Thus, Plaintiff's allegations must be reviewed in accordance with the directives of the PLRA.

C.  Background

As the law requires, at this stage of the proceeding all disputed facts and inferences are to be resolved in favor of Plaintiff, the non-moving party.

The Complaint states that on May 6, 2011, Plaintiff was transferred to SCI-Fayette and held in the "SMU / RHU / MHU"[5] in retaliation for his filing grievances, and filing "affidavits and agree[ing] to be a witness in three civil actions against the defendants" filed by inmates who were also housed in SCI Fayette's SMU unit. Complaint, ¶¶ 75 - 89. In addition to allegedly being housed with mentally ill inmates, the Complaint also describes various other acts of alleged retaliation to which Plaintiff was subjected, *to wit*: harassment, including "interfering with Plaintiff's grievance appeals, forcing the plaintiff to give urine every two weeks, and vandalizing the plaintiff's personal property." Complaint at ¶ 70. It is alleged that Defendants Trepold, Buzas, Berrier, Walker, Byers, House, and Coleman all took part in the various retaliatory actions. *Id*. at ¶ 70.

Plaintiff also alleges that while housed in the SMU, he was subjected to cruel and unusual punishment in that he was forced to live with mentally ill prisoners, denied heating during the winter, and was subjected to second hand smoke caused by the correctional officers smoking in the vicinity of his cell.[6] He alleges that the conditions on the SMU L Block included inmates

---

[5]  Special Management Unit; Restricted Housing Unit; and Mental Health Unit.

[6]  In his Response to the Motion to Dismiss, Plaintiff clarifies that he is not filing a separate

"who yelled, bang and throw feces, urine and semen at one another. Other inmates rub dung on themselves and their cells," Complaint at IV (C), and "flood the tier with blood and urine." *Id*. at ¶ 7. He alleges that all of the defendants "turn[ed] a blind eye and deaf ear" to his complaints and subjected him to "the cruel and unusual conditions of confinement." *Id*. at ¶¶ 41 - 42.

The Complaint also states that Plaintiff was subjected to race discrimination insofar as white inmates got moved out of the SMU more quickly than minorities. *Id*. at ¶¶ 63 - 67. It asserts that Defendants Parsons, Byers, Berrier, Buzas, Gates, Mickelson, Clark, and House all took part in the discriminatory actions. *Id*. at ¶ 67.

The Complaint also describes a conspiracy between Defendants Buzas, Byers and Berrier in which these Defendants allegedly destroyed Plaintiff's mail and grievances "to keep the plaintiff from wining grievances" and/or improperly charged Plaintiff's inmate account for postage for mail that was never sent out. *Id*. at ¶¶ 89 - 98.

Lastly, the Complaint states that mail room inspectors, under the instruction of Defendant Linderman, withheld and opened outside of his presence, his privileged mail correspondence in violation of the First Amendment. *Id.* at ¶ 115. The Complaint asserts that Defendants Coleman, Wetzel, Gates, Buzza, Walker, Oppman, Parsons, and House were on notice of the mishandling of Plaintiff's privileged correspondence. *Id*. at ¶ 119.

Plaintiff alleges that the foregoing actions constitute violations of his First, Eighth, and Fourteenth Amendment rights guaranteed by the United States Constitution.

---

"exposed to tobacco smoke" claim, but rather "it is a facet of the plaintiff's conditions of confinement allegation . . . ." Resp. at 7 (ECF No. 7).

Defendants move to dismiss the Complaint on several grounds: (i) lack of personal involvement on the part of some of the Defendants; (ii) failure to exhaust a conditions of confinement claim; (iii) failure to state an exposure to tobacco claim; (iv) failure to state a retaliation claim; and (v) failure to state a race discrimination claim.

D. Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-331 (1986).

1. First Amendment Claims

    a. Retaliation

"Retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution . . ." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. Plaintiff must demonstrate that (1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

9

The Complaint states that the actions of Defendants were done in retaliation against Plaintiff because he has filed a number of grievances against prison officials and because he has filed affidavits and agreed to be a witness in other prisoner's lawsuits. A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages under the constitution).

Based on the allegations set forth in the Complaint, if true, Plaintiff may be able to support a claim of retaliation against Defendants. It is plausible that the alleged acts of retaliation were sufficient to deter a person of ordinary firmness from exercising his constitutional rights. However, because retaliation claims can be easily fabricated, courts must view prisoners' retaliation claims with sufficient skepticism. *See Jones v. Beard*, No. 07-951, 2009 WL 1913302 at *3 (W.D. Pa. July 2, 2009) (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996)). Plaintiff should be aware that he faces a high burden in demonstrating retaliation in the manner in which he alleges. Specifically, Plaintiff must demonstrate the crucial third element of a retaliation claim, causation, which requires him to prove either (i) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (ii) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Moreover, Defendants will be able to defeat his retaliation claims if they can demonstrate that they would have taken the same action even absent Plaintiff filing grievances and/or agreeing to participate in lawsuits filed by

other inmates. At this time, however, Defendants' motion will be denied and Plaintiff's retaliation claims will proceed.

    b.    <u>Opening of His Incoming Mail</u>

Plaintiff contends that on January 17, 2012, Attorney Ronald W. Chadwell mailed him privileged correspondence (Complaint at ¶ 101), which was opened outside his presence and that on January 31, 2012, his privileged correspondence was again opened outside his presence, although he does not state who sent this correspondence.[7] With respect to the handling of inmate mail, the Pennsylvania Department of Corrections has implemented a written policy, which is set out in DC-ADM 803.[8] The DOC policy speaks in terms of "privileged correspondence" as follows:

> Section 2 - Security Procedures.
>
> A.    Incoming Correspondence
>
> > 1. All incoming correspondence, other than privileged correspondence shall be opened in the facility's mailroom by staff and inspected for contraband. . . .
>
> B.    Incoming Privileged Correspondence
>
> > 1. Incoming privileged correspondence that is **hand-delivered to the Department in accordance with 37 Pa. Code § 93.2(c)(1)(i) or which is**

---

[7] Unfortunately, as Defendants point out, Page 10, Paragraphs 94 - 110, inclusive, of the Complaint is nearly impossible to read due to the very light print. The Court has fared no better than Defendants in trying to decipher the contents of the majority of the claims raised in these Paragraphs.

[8] The Court takes judicial notice of the fact that DOC has promulgated DC-ADM 803 entitled Inmate Mail and Incoming Publications. DC-ADM 803 is available at the DOC website: http://www.cor.state.pa.us/standards/lib/standards/803_Inmate_Mail_and_Incoming_ Publications_Policy_Manual.pdf.

11

> **identified by a control number issued by the Office of Chief Counsel** in accordance with 37 Pa. Code § 93.2(c)(1)(ii) and correspondence sent by a court will be opened and inspected for contraband in the presence of the inmate to whom it is addressed.

DOC Inmate Mail and Incoming Publications - Policy Statement (emphasis added).

The United States Court of Appeals for the Third Circuit has stated that "privileged correspondence" has been limited to communications from attorneys, courts, and certain elected and appointed officials. *Fontroy v. Beard,* 559 F.3d 173, 175, n.2 (3d Cir. 2009). Further, the *Fontroy* court held, at least implicitly, that any mail from an attorney or court <u>not</u> bearing a control number may be opened outside the presence of the inmate without violating the inmate's First Amendment rights.

In the case at bar, the alleged "privileged correspondence" was sent by Attorney Chadwell, Plaintiff's opposing counsel in the case <u>Charles Whitney v. Dorina Varner</u>, et al, Civil Action No. 3: 11-cv-02022 (M. D. Pa). Plaintiff does not allege that the incoming mail was hand delivered, nor does he provide any facts to suggest that there was a Control Number on the mailing. Complaint, at ¶¶ 102, 104, 110, 114. Thus, Plaintiff's claim that the correspondence from Attorney Chadwell constituted "privileged" mail fails to state a claim upon which relief can be granted.

Furthermore, assuming *arguendo*, that the correspondence from Attorney Chadwell could be considered "legal mail",[9] the Court finds that the Complaint still fails to state a claim upon which relief can be granted. As our appellate court noted in *Bieregu v. Reno,* 59 F.3d 1445, 1456

---

[9] The *Fontroy* court observed that "for purposes of this opinion, we use the term 'legal mail' to refer to incoming attorney and court mail, collectively." *Fontroy*, 559 F.3d at 174 n.1.

(3d Cir. 1995), "the right of court access guarantees the **privacy of attorney-client communications.**" (emphasis added). Here, there is no attorney-client relationship between Plaintiff and his opposing counsel. Thus, even if the court assumed for the sake of argument that the envelope containing the correspondence from Attorney Chadwell may have indicated it was from an attorney and hence, potentially "legal" mail, such would not be sufficient to bring the correspondence contained therein within the special protections courts have deemed required for communications from courts and from attorneys who possess an attorney client relationship with inmates.

Therefore, it is recommended that this claim be dismissed without leave to amend because amendment would be futile.

2. <u>Eighth and Fourteenth Amendment Claims</u>

Given the liberal treatment afforded *pro se* litigants, the Court finds that Plaintiff's complaint adequately alleges an Eighth Amendment claim as to the conditions of confinement that Plaintiff was subjected to while housed in SCI-Fayette SMU. There is a potential set of facts which, consistent with the facts alleged in the complaint, may constitute cruel and unusual punishment. The Court recognizes that discovery may well reveal that the alleged conduct of Defendants does not give rise to an Eighth Amendment cruel and unusual punishment claim, but at this stage of the litigation, the allegations of the Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor.

Likewise, Plaintiff's invocation of racial animus and allegations that white inmates are treated differently from "black" and "latino" inmates is sufficient to state an Equal Protection claim under the Fourteenth Amendment at this early stage of the litigation.

    3.    <u>Miscellaneous Defenses</u>

        a.    <u>Failure to Exhaust Conditions of Confinement Claims</u>

Defendants raise a failure to exhaust defense with regard to Plaintiff's conditions of confinement claims. They note that Plaintiff's first grievance was filed in August 2011, nearly three months after his transfer to the SMU at SCI-Fayette. Plaintiff responds that he did in fact file grievances and "this is why the defendants told the plaintiff to stop filing grievances." (ECF No. 32 at 6.) Plaintiff also asserts that Defendants prevented Plaintiff from utilizing the grievance procedure in that he "had to file grievances after grievances just to get grievance tracking numbers, grievances response and timely answers for grievance." (ECF no. 32 at 6).

It is well established that a grievance procedure, even if it exists on paper, is not "available" under the meaning of section 1997e(a) if prison officials somehow prevent a prisoner from utilizing it. *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Failure by prison officials to respond to written requests can qualify as the sort of "prevention" that renders an existing administrative grievance policy unavailable. *Hennis v. Tedrow*, Civil Action No. 10-445, 2011 WL 1230337 (W.D. Pa. March 31, 2011). Given Plaintiff's assertions, it appears that, at the very least, a factual question exists as to what extent administrative remedies were available to Plaintiff with respect to this claim. As such, Defendants' motion will be denied without

prejudice on this ground and they may reassert this argument in a properly filed motion for summary judgment.[10]

   b.   Personal Involvement

It is well established that civil rights claims cannot be premised on the theory of respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976). Liability cannot be based solely on the basis of a defendant's supervisory capacity. The plaintiff must allege that the official had knowledge of or acquiesced in any purported acts of constitutional mistreatment. *See Rode*, 845 F.2d at 1207.

It is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997).

---

[10] The Court of Appeals for the Third Circuit has observed that defendants may raise on a 12(b)(6) motion an affirmative defense, such as failure to exhaust, in appropriate cases only if the defense would present "an insuperable barrier to recovery by the plaintiff." *Ray v. Kertes*, 285 F.3d 287, 295 n. 8 (3d Cir. 2002) (citing *Flight Systems, Inc. v. Electronic Data Systems Corp.*, 112 F.3d 124, 127 (3d Cir. 1997).

15

Furthermore, participation in the after-the fact review of a grievance or appeal is not enough to establish personal knowledge. *See Rode,* 845 F.2d at 1208; *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *Quijada v. Bledsoe*, Civil No. 08-2022, 2011 WL 1303224 (M.D. Pa. March 31, 2011). Indeed, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. *See Inmates of Attica Corr. Facility v. Rockefeller,* 477 F.2d 75, 382 (2d Cir. 1973)." *Paluch v. Sec'y Pennsylvania Dept. Corr.*, 442 F. App'x 690, 695 (3d Cir. 2011).

Defendants allege that Plaintiff has failed to establish personal involvement against Defendants Wetzel, Coleman, Switzer, House, Linderman, and Oppman. (ECF No. 30 at 5).

Plaintiff's Complaint alleges that Defendant John Wetzel, the Secretary of the Department of Corrections, "was personally involved and knew of" Plaintiff's complaints about his conditions of confinement because (i) Plaintiff spoke to him "at some point in time", Complaint at ¶ 72; (ii) Plaintiff wrote him a letter, but does not explicitly allege a date when the letter was written, *Id*. at ¶ 73; (iii) Defendant Wetzel knew of the mishandling of Plaintiff's privileged correspondence, *Id*. at ¶ 119, and (iv) he was informed through the grievance system of Plaintiff's concerns, *Id*. at ¶ 120. The claims against Defendant Wetzel consist of little more than assertions of respondeat superior liability which as a matter of law do not suffice to state a constitutional tort claim. Therefore, Defendant Wetzel is entitled to be dismissed from this case.

Likewise, Defendants House and Switzer are also entitled to be dismissed from the case. Plaintiff asserts that Defendant House "could have ordered the plaintiff['s] living conditions to be changed and order that the heat be put back on and that the vents be cleaned," ECF No. 32 at 2, and that Defendant Switzer should have ordered the officers to stop smoking, ECF No. 32 at 2, and that Defendant Switzer "falsified the grievance response." ECF No. 7 at ¶ 26. These are also assertions of respondent superior liability and/or participation in the grievance process, all of which are insufficient for purposes of establishing personal involvement of the individual.

Plaintiff asserts that Defendant Linderman "ordered the mail room inspectors to open and read plaintiff's privileged mail." As the Court has recommended that all claims pertaining to the opening of Plaintiff's privileged mail should be dismissed, the claim against Defendant Linderman should be dismissed as well.

As to Defendant Oppman, the Complaint alleges that Defendant Oppman was in a conspiracy with others to destroy Plaintiff's mail and to improperly charge his inmate account for mail that was never sent out. Resp. at 3 (ECF No. 32); Complaint at ¶ 119. While the Court of Appeals for the Third Circuit is "mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances . . . , the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)); *see also Adams v. Teamsters Local 115,* 214 F. App'x 167, 175 (3d

17

Cir. 2007) (a conspiracy claim cannot proceed merely upon the conclusory averment that a conspiracy took place but rather requires factual averments that would support the inference that the defendants engaged in concerted or joint action). These bald and conclusory factual averments about Defendant Oppman's involvement in an alleged conspiracy are insufficient to state a claim on which relief can be granted.

The Court cannot agree, however, that the claims against Defendant Coleman should be dismissed. Plaintiff accuses Defendant Coleman of failing to intervene or take corrective action after he was made aware of Plaintiff's complaints regarding his conditions of confinement and that Defendant Coleman personally approved of the discriminatory policy which resulted in minority inmates spending more time in the SMU program than white or European inmates.

In cases where a supervising official knowingly permits a continuing custom or policy that results in harm to a plaintiff, section 1983 liability may attach. *See Colburn v. Upper Darby Twp.*, 838 F.2d 663, 673 (3d Cir. 1988) (*overruled in part on other grounds by Leathermanv. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). However, at a minimum, such liability attaches "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Colburn*, 838 F.3d at 673.

Here, based on the liberal review of the Complaint, it appears that Plaintiff's allegations involve a theory of liability under which a supervisor may be liable. Based on the

18

allegations of the Complaint, the Court finds that Plaintiff has sufficiently stated a claim under a theory of supervisory liability against Defendant Coleman. As such, Defendants' motion to dismiss should be denied as to their contention that Plaintiff has failed to establish the requisite personal involvement by Defendant Coleman.[11]

D. Futility

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id*.

Given that the Court has already provided Plaintiff with an opportunity to amend, the Court is not required to provide him with further leave to amend as further amendment would be futile. *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012).

III. CONCLUSION

For all the foregoing reasons, it is recommended that the Motion to Dismiss filed by the Defendants be granted in part and denied in part. The Motion should be granted as to Plaintiff's claims under the First Amendment that his privileged mail was improperly opened and granted as to Defendants' request to dismiss Defendants Wetzel, House, Switzer, Linderman, and Oppman based on lack of personal knowledge. The Motion should be denied as to Plaintiff's First

---

[11] In so recommending, Plaintiff should be aware that his burden of proving supervisory liability is high. As stated above, to impose liability on a supervisory official Plaintiff must demonstrate both contemporaneous knowledge and acquiescence.

19

Amendment retaliation claim, his Eighth Amendment conditions of confinement claim, his Fourteenth Amendment equal protection claim, and denied with respect to Defendants' request to dismiss Defendant Coleman.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed until **September 9, 2013** to file objections. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.

*s/ Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

Dated: August 21, 2013

cc: CHARLES WHITNEY
DM 3996
SCI Benner
301 Institution Drive
Bellefonte, PA 16823


Yana L. Chudnovsky
Deputy Attorney General
Email: ychudnovsky@attorneygeneral.gov