# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES WHITNEY,

    Plaintiff,

v.

JOHN E. WETZEL, et al,

    Defendants.

) Civil Action No. 2: 12-cv-01623
)
)
) Chief United States District Judge
) Joy Flowers Conti
)
) United States Magistrate Judge
) Cynthia Reed Eddy
)

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Motion for Summary Judgment be granted and Plaintiff's Motion for Partial Summary Judgment be denied.

### II.    REPORT

#### A.    Background

Plaintiff, Charles Whitney ("Plaintiff" or "Whitney"), is an inmate currently incarcerated at the State Correctional Institution at Benner Township. This lawsuit was initiated on November 6, 2012, with the filing by Whitney of a Motion for Leave to Proceed *in forma pauperis*, with an attached Complaint (signed by Whitney on November 1, 2012). After the prerequisite financial documents were received from Whitney, his Motion was granted and the Complaint was filed (ECF No. 2).

Though Whitney does not specifically mention 42 U.S.C. § 1983, which is the Civil Rights Act, in his Complaint, it is clear that Plaintiff is seeking to assert liability pursuant to 42 U.S.C. § 1983, as he alleges violations of his rights under the First, Eighth, and Fourteenth Amendments. The dispute in this case centers around the time period from May 6, 2011, to May

17, 2012, while Whitney was incarcerated at SCI-Fayette and housed in the Special Management Unit ("SMU").[1]

Defendants filed a Motion to Dismiss (ECF No. 29), to which Whitney responded in opposition (ECF No. 32).  The undersigned issued a Report and Recommendation, which recommended that Defendants' Motion be granted in part and denied in part (ECF No. 37).  The Chief District Judge adopted the Report and Recommendation, as supplemented, as the Opinion of the Court (ECF No. 40).  By virtue of that ruling, three (3) claims remain:  Plaintiff's First Amendment retaliation claim; Plaintiff's Eighth Amendment conditions of confinement claim; and Plaintiff's Fourteenth Amendment equal protection claim (ECF No. 41).

Presently before the Court is Defendants' Motion for Summary Judgment, with Brief in Support (ECF Nos. 73 and 74), to which Whitney has responded in opposition (ECF No. 79). Whitney has filed his own Motion for Partial Summary Judgment with brief in support (ECF Nos. 77 and 78), to which Defendants have responded in opposition (ECF No. 81). The issues have been fully briefed and the factual record has been thoroughly developed via the parties statements of material facts, appendices, and declarations (ECF Nos. 75, 76, and 79).

### C.    Standard of Review for Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex*

---

[1]     The SMU is "[a] special  unit within designated Department facilities designed to safety (sic) and humanely handle an inmate whose behavior presents a serious threat to the safety and security of the facility, staff, other inmates or himself / herself."  DC-ADM 801, Discipline Procedures Manual, Glossary of Terms.  (ECF No. 76-2).

*Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460–61 (3d Cir. 1989) (the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents ( i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex,* 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007). Importantly, however, in a case such as this one where there is a video recording of the incidents in question, the Court need not adopt the non-

movant's version of the facts if the recording "blatantly contradict[s]" the non-movant's version "so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, this does not require the Court to credit his "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Thus, for example, mere allegations, without support, are insufficient. Rather, the allegations must be supported by evidence, which the Court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

**D.      Discussion and Analysis**

**1.      Defendants' Motion for Summary Judgment**

As indicated *supra*, as a result of the Court's ruling on Defendants' Motion to Dismiss, three (3) claims remain:   Plaintiff's First Amendment retaliation claim; Plaintiff's Eighth Amendment conditions of confinement claim; and Plaintiff's Fourteenth Amendment equal protection claim.  These claims will be discussed seriatim.

a.      *First Amendment - Retaliation Claim*[2]

It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under section 1983.  *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation

---

[2]      The Court notes that this is not the first time Plaintiff has filed a lawsuit alleging that his placement in a SMU / RHU (Restricted Housing Unit) unit is in retaliation for his filing grievances. *See Whitney v. Varner*, 3:2011-cv-2022 (M.D.Pa) (alleging that upon transfer from SCI-Fayette to SCI-Smithfield on November 16, 2010, he was placed in RHU on administrative custody status in retaliation for filing grievances); *Whitney v. DOC*, 3:14-cv-0357 (M.D.Pa.) (alleging that upon transfer from SCI-Fayette to SCI-Rockview on May 17, 2012, he was placed in RHU in retaliation for filing grievances.)

claim, a plaintiff must show three things: (i) the conduct which led to the alleged retaliation was constitutionally protected; (ii) that he was subjected to adverse actions by a state actor (in this case, the prison officials); and (iii) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. Even if "a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenging decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to legitimate penological interest." *Rauser*, 241 F.3d at 334.

Whitney claims that upon his transfer to SCI-Fayette he was placed in the "SMU / RHU / SSNU / MHU"[3] in retaliation for filing grievances and agreeing to be a witness in other inmates' lawsuits. Defendants do not dispute that Whitney engaged in protected activity or that he was subjected to adverse actions. What they do dispute though is that Whitney's protected activity was a substantial motivating factor in the decision to place him in SMU. Defendants contend that Whitney was placed in the SMU for legitimate penological interests as he has an his extensive misconduct history.[4] Defendants also state that the final decision to place an inmate in the SMU is made by the DOC Central Office. *See* ECF No. 76-1 at p. 4.

---

[3]     The RHU is "[a]n area or group of cells for an inmate assigned to administrative or disciplinary custody status." DC-ADM 801, Inmate Discipline Procedures Manual, Glossary of Terms (ECF No. 76-2). According to the summary judgment record evidence, SCI-Fayette does not house Secure Special Needs Unit ("SSNU") or Mental Health Unit ("MHU) inmates. *See* ECF No. 76-1(c).

[4]     Whitney argues that "defendants only makes the claim that plaintiff was placed in the RHU/SMU/SSNU and MHU at SCI Fayette because of one misconduct report that being misconduct #B213146 which was wrote and issued to the plaintiff on 11-28-2010." Pl's response at 11 (ECF No. 79). Defendants, however, argue that Whitney had an extensive history of misconducts, as evidence by his Cell History Report, all of which factored into the decision to place him in the SMU at SCI-Fayette.

The Court finds that the record evidence does not establish that Whitney's protected activity was a substantial motivating factor in the decision of the prison officials to take the adverse action. DOC records indicate that immediately prior to Whitney's transfer to SCI-Fayette, he was housed from November 16, 2010 through May 6, 2011, at SCI-Smithfield in the RHU. Upon transfer to SCI-Fayette on May 6, 2011, he was placed in the SMU unit. *See* ECF No. 76-4 (Cell History of Charles Whitney). Whitney's cell history reflects that since August 31, 1998 (the date of his initial incarceration with the DOC), through November 25, 2013 (the date of the last entry on the Cell History report), Whitney was incarcerated for approximately 5,565 days. Of that time, Whitney spent approximately 4,076 days, or 73%, in either RHU or SMU custody. According to Plaintiff's own deposition testimony, he has received over 60 misconducts. *See* ECF No. 74-3 at pp. 58-59.

Additionally, the record evidence reflects that Whitney was transferred to the SMU Program at SCI-Fayette because he received a misconduct while at SCI-Smithfield which precluded him from completing Phase I probation. *See* ECF No. 74-1. Plaintiff has not submitted any evidence to refute the accuracy of these records, other than to say that he was placed in RHU at SCI-Smithfield on a "bogus misconduct."[5] Because the summary judgment record evidence demonstrates that the prison officials would have taken the same action without the unconstitutional factors, Whitney cannot prevail on his retaliation claim. Accordingly, the Court recommends that summary judgment be granted on this claim.

---

[5]     Whitney filed a lawsuit on August 15, 2011, in which he alleged, *inter alia,* that Misconduct B213146 was a false disciplinary charge. However, at Whitney's request, that lawsuit was voluntarily dismissed on September 23, 2011. *See Whitney v. Varner*, 3: 2011-cv-1504 (M.D.Pa.).

b. *Eighth Amendment - Conditions of Confinement*

Whitney next claims that the conditions of confinement in the SMU at SCI-Fayette violated his rights under the Eighth Amendment. In particular, Whitney alleges that the general conditions were insufferable as other inmates threw urine and feces, clogged their toilets, banged on their sinks and toilets, and made noise at night. As to specific conditions, Whitney alleges that he was forced to live with mentally ill patients and was denied heating during the winter. Defendants move for summary judgment arguing that Whitney has not provided any evidence to support an Eighth Amendment conditions of confinement claim as he has not established that he was deprived of any necessity, such as food, clothing, or shelter.

The Eighth Amendment imposes upon prison officials a duty to provide 'humane conditions of confinement.'" *Allah v. Bartkowski*, 574 F. App'x 135, 138 (3d Cir. 2014) (*quoting Betts v. New Castle Youth Dev. Ctrs*., 621 F.3d 249, 256 (3d Cir. 2010)). When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, the relevant inquiry is whether the prisoner has been deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). *See Atkinson v. Taylor,* 316 F.3d 257, 272 (3d Cir. 2003). A prisoner must establish that he has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). General allegations of harm will not suffice. *Id.* at 709; *see also Thomas v. Rosemeyer* 199 F. App'x 195, 198 (3d Cir. 2006). The Constitution does not mandate comfortable prisons. *Rhodes*, 452 U.S. at 349. Prisons housing "persons convicted of serious crimes cannot be free of discomfort." *Id. Accord Griffin*, 112 F.3d 703 (3d Cir. 1997) (restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).

In order to succeed on an Eighth Amendment conditions of confinement claim, Plaintiff must demonstrate both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while Defendants had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). With respect to the first requirement, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. *Hudson v. McMillen*, 503 U.S. 1, 8–9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions—considered alone constitutionally insufficient—may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise. . . ." *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

Courts are unanimous in holding that the conditions in restrictive housing in Pennsylvania prisons do not, in and of themselves, violate the Eighth Amendment. *Griffin*, 112 F.3d 703 (3d Cir. 1997); *Dockery v. Legget*, 2:09-cv-0732, 2012 WL 2872554 (W.D.Pa. May 22, 2012), *report and recommendation adopted*, 2012 WL 2872106 (W.D.Pa. Jul. 12, 2012) (granting defendants' motion for summary judgment regarding conditions of confinement in special housing units at SCI-Forest and SCI-Fayette); *aff'd,* 509 F. App'x 107 (3d Cir. Jan. 11, 2013); *Fortson v. Kelchner*, 2009 WL 693247, at *3 (W.D.Pa. Mar. 13, 2009) (granting defendants' motion to dismiss as to plaintiff's Eighth Amendment claim regarding confinement in the RHU and SMU); *Pressley v. Blaine*, 544 F. Supp.2d 446, 453 (W.D.Pa. 2008) (holding

that the conditions of disciplinary confinement did not implicate the Eighth Amendment); *rev'd on other grounds*, 352 F. App'x 701 (3d Cir. 2009); *Dantzler v. Beard*, Civil No. 05–1727, 2007 WL 5018184, at *11–12 (W.D.Pa. Dec. 6, 2007) (holding that the conditions of confinement in the SMU and LTSU did not amount to cruel and unusual punishment in violation of the Eighth Amendment); *Woods v. Abrams*, Civil No. 06–757, 2007 WL 2852525, 14 (W.D.Pa. Sept. 27, 2007) (holding that the conditions of confinement in the LTSU did not satisfy the objective component of an Eighth Amendment claim); *Banks v. Beard*, Civil No. 03–659, 2006 WL 2192015, at *11 (W.D.Pa. Aug. 1, 2006) (same); *Rivera v. Pennsylvania Dept. of Corrections*, 837 A.2d 525, 530–532 (Pa. Super. 2003) (same).

With respect to the second element, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. *Farmer*, 511 U.S. at 833; *Wilson*, 501 U.S. at 297; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). This requires a court to determine, subjectively, whether the officials acted with a sufficiently culpable state of mind. *Id*.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

*Farmer,* 511 U.S. at 838. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. A trier of fact may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. *Id.* at 842.

With this standard in mind, the Court turns to Plaintiff's claims that he suffered violations of his rights under the Eighth Amendment as a result of the conditions in SCI-Fayette's SMU unit.[6]

Defendants deny that Whitney was forced to live with mentally ill patients, as "[i]nmates with major psychiatric disorders are generally excluded from placement in the SMU." (ECF No. 76-1, at p. 24, ¶ 194.)  The summary judgment record evidence also reflects that in response to Grievance # 394232, in which Whitney complained of the temperature in his cell, Whitney's cell was checked on December 29, 2011, and was found to be 72 degrees Fahrenheit. *See* ECF No. 76-6 at p. 3; ECF No. 79 at p 24. Whitney was informed that "[t]he system . . . continuously blows 70-74 degree air.  This may feel cool to you as average body temperature is 98.6 degrees but since it is constant the ambient temperature is maintained within prescribed parameters." *Id.*  No action was taken as the cell was found to be at an adequate temperature.

Furthermore, in cases involving inmates throwing feces at prison staff or smearing feces on cell walls, the United States Court of Appeals has granted summary judgment where the inmate failed to establish that conditions posed a substantial risk of serious harm. *See Banks v. Mozino*, 423 F. App'x 123 (3d Cir. 2011) (per curiam).  The fact that some inmates smear feces

---

[6]    It appears that Whitney's first grievance during the relevant time period was on August 9, 2011, Grievance 376414, where he complained that he was being "housed on a DC custody pod with DC status inmates. Although this inmate, Charles Whitney, is not on DC status but has become AC status since August 5, 2011.  All other AC status inmates are housed on different pods such as Pod C and B of the SMU L Block." (ECF Nos. 76-8; 79 at 11).  At the time Whitney filed the grievance, he was being house on Pod A.  On August 9, 2011, Whitney was moved to Pod B and then on November 3, 2011, he was moved to Pod D, where he remained until he was transferred to SCI-Rockview on May 17, 2012.  The summary judgment record also reflects that on September 3, 2011, Whitney filed Grievance 379888, in which he complained that he was being "housed around SSNU and MHU inmates who . . . are creating a poor and unsafe housing and living condition and can eat away at this inmates sanity."  ECF No. 79 at p. 15.

on the walls of their cells, does not, without more, give rise to an unconstitutional condition of confinement. *Bracey v. Beard*, Civil Action No. 11-217, *report and recommendation adopted* by 2014 WL 4659369, at *6 (W.D.Pa. Sept. 17, 2014).

In response to propounded Interrogatories, Defendants stated that Whitney was the only inmate in the SMU program complaining about being housed around inmates that rub feces on the walls of their cell. Whitney does not provide any evidence regarding where he was housed in relation to the cells with smeared feces nor does he allege or provide evidence that his cell was smeared with feces, that he was in anyway exposed to the feces or unsanitary conditions. or that Defendants failed to address the situation when it arose. *Id*. at *5; *see Farmer v. Brennan*, 511 U.S. at 838.

The Court finds that Whitney has presented no evidence of an excessive risk to <u>his</u> health or safety. He has presented no evidence that <u>he</u> was denied basic human needs such as food, clothing, shelter, sanitation, medical care, or personal safety. The lack of evidence is fatal in support of his conditions of confinement claim as a matter of law, for no reasonable juror could conclude that Whitney's rights were violated.

For these reasons, the Court finds, given the dearth of summary judgment record evidence, that Defendants are entitled to summary judgment as a matter of law with respect to Whitney's Eighth Amendment conditions of confinement claims.[7]

---

[7]  Because Whitney has failed to establish the first element sufficient to support his conditions of confinement claim – that he was denied the "minimal civilized measure of life's necessities" -  the Court need not address the second element – deliberate indifference to prison conditions on the part of prison officials. *Farmer*, 511 U.S. at 834.

c.     *Fourteenth Amendment - Equal Protection Claim*

Plaintiff's third claim is that "there is a very big difference between the black and Latino inmates of the SMU getting only time cuts.  And the white inmates in the SMU get let out early the difference is this time cuts happen but the inmate still remain inside the RHU level 5 housing unit."  Resp. at 46 (ECF No. 79).  During his deposition, Whitney testified that "[a]ll the other inmates were getting time cuts besides [him]."[8]  ECF No. 74-3 at p. 31.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  Equal protection claims are subject to a two-part analysis. In order to state an equal protection claim, a plaintiff must first show that he has been treated differently from similarly-situated individuals. *City of Cleberne, Tex. v. Cleberne Living Center*, 473 U.S. 432, 439 (1985) (finding that the Equal Protection Clause of the Fourteenth Amendment directs that all persons similarly situated should be treated alike (*citing Plyler v. Doe,* 457 U.S. 202, 216 (1982)). If the plaintiff makes such a showing, then the defendant would have to show that the different treatment is rationally related to a legitimate state interest. *Id*. at 440 (citations omitted); *McGinnis v. Royster*, 410 U.S. 263, 270 (1973) (finding that the challenged distinction (state classifications used to determine parole eligibility) rationally furthers a legitimate, articulated state purpose). "The standard for equal protection analysis in relationship to prisoners qua prisoners (i.e., in the absence of other characteristics that may make an individual a member of a suspect class) is rational basis, not heightened scrutiny." *Scott–El v. U.S. Parole Com'n*, 2006 WL 2671399 *3 (M.D.Pa. 2006) (citing *Jackson v. Thornburgh*, 907 F.2d 194, 196–97 (D.D.C. 1990).  Since this case is before the Court on a properly supported motion for summary judgment

---

[8]     The Defendants deny this and state that Whitney received a time cut on July 5, 2011. ECF No. 79 at 37; ECF No. 76-1, at 22, Answer to Interrogatory No. 58.

submitted by Defendants, Whitney has the burden of establishing the existence of purposeful discrimination. *See Hernandez v. New York*, 500 U.S. 352, 373 (1991).

Whitney makes specious and conclusory allegations regarding a denial of his equal protection rights. He claims that he was treated differently from the following groups:

> (i) "Inmates Abdul Brown, R.E. Johnson, F. Ray, G. Brown all was gave time cuts on this dC time all of these men are Black, African Americans, Nubians, Negros and or of African Desendency as the Plaintiff is what is now called a Black and of African American. Plaintiff was treated differently out of these inmates;" and

> (ii)    "Then plaintiff was a part of another class group this group was called and or classified as "SMU returns" by the defendants . . . . The inmates who was in SMU return was Plaintiff Charles Whitney, Abdul Brown, Inmate John and Inmate A. Ferlion."

Response at 31 (ECF No. 79). The key to an equal protection claim requires a showing that "similarly situated" inmates were treated differently and that the difference in treatment arises out of Defendants' intentionally discriminatory acts. Other than Whitley's conclusory allegations, the record is void of any evidence which establishes that these inmates were actually "similarly situated" to Whitney. For example, there is no evidence which indicates that these inmates had comparable misconduct histories to Whitley's misconduct history. Thus, the Court recommends that summary judgment be entered on Whitney's equal protection claim as he has failed to show that he was treated differently from similarly situated inmates and that his unequal treatment was a result of intentional discrimination as required to establish an equal protection violation.

## 2.    Plaintiff's Motion for Partial Summary Judgment

The majority of the issues raised by Whitney in his Motion for Partial Summary Judgment overlap with the issues raised by Defendants in their Motion for Summary Judgment. Therefore, to the extent that Plaintiff argues he is entitled to summary judgment on his claims of

retaliation, conditions of confinement, and equal protection, it is recommended that such claims be denied for the reasons discussed *supra*.

Whitney also raises a claim for theft of property in his motion. However, as Defendants correctly respond, this claim was not raised by Whitney in his Complaint. Therefore, Whitney cannot now raise this claim at this late date, especially without being granted leave of court to do so.

Similarly, Whitney argues that he is entitled to summary judgment on his "conspiracy" claim. Again, this was not a separate claim identified in Whitney's handwritten, 121-paragraph Complaint. However, assuming *arguendo* that a conspiracy claim had been included in the Complaint, the Court finds that there is absolutely no evidence in the summary judgment record from which a reasonable fact finder could find that any of the actions of the SCI-Fayettte prison officials were taken as a result of any conspiracy with the SCI-Smithfield prison officials.

Whitney also asserts that certain allegations were not addressed in Defendants' Answer and therefore should be deemed admitted. However, as Defendants correctly respond, they were not required to respond in their Answer to issues and/or address individuals who had been dismissed from the lawsuit as a result of the ruling on their Motion to Dismiss. Accordingly, there was no need for a response to be supplied for those claims and/or individuals.

For all these reasons, the Court recommends that Plaintiff's Motion for Partial Summary Judgment be denied.

## III.     Conclusion

For the reasons stated above, it is respectfully submitted that Defendants' Motion for Summary Judgment be granted and that Plaintiff's Partial Motion for Summary Judgment be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file Objections to this Report And Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman,* 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: July 6, 2015

<div style="margin-left:50%">

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

</div>

cc:    CHARLES WHITNEY
       DM 3996
       SCI-Benner
       301 Institution Drive
       Bellefonte, PA 16823
       (via U.S. First Class Mail)

       Yana L. Warshafsky
       Office of Attorney General
       (via ECF electronic notification)